UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**TAYLOR HALL**,

        Plaintiff,

        v.

**CHRISTINE WORMUTH**,
Secretary of the Army

        Defendant.

Case No. 22-cv-1426 (CRC)

## MEMORANDUM OPINION

Taylor Hall, a former cadet of the United States Military Academy ("USMA" or "the academy"), was separated from the academy in 2013. Several years later, Hall petitioned the Army Board for Correction of Military Records ("ABCMR" or "the Board") to correct his records and award him a USMA degree. Though the Board initially found such relief appropriate, the Deputy Assistant Secretary for the Army ("DASA") tasked with reviewing ABCMR decisions disagreed. Hall filed suit against the Secretary of the Army, challenging the DASA's decision under the Administrative Procedure Act ("APA"), and soon after the parties agreed to remand the case to the ABCMR. On its second review, the Board found that correction of Hall's military record was unwarranted. Hall now challenges that decision, and both parties have moved for summary judgment. Finding that the ABCMR's decision complied with the APA, the Court will grant the Secretary of the Army's motion and deny Hall's.

I.   **Background**

   A.   Factual Background

Taylor Hall attended the United States Military Academy at West Point from 2008 to 2013. Joint Appendix ("JA") at 5.[1] Over the course of his first two years, Hall maintained a "B" grade average, played on the junior varsity football team, and earned an award for Best New Cadet. Id. He struggled, however, in his Army Physical Fitness Tests ("APFTs"), which are periodically administered to test cadets' physical abilities. Id. at 12–13. Cadets' performance on APFTs also factors into their grades for a series of required USMA courses, known as Military Development or MD. See generally Am. Compl. ¶ 27; JA at 17. In his first year, Hall earned his lowest marks in the two-mile run portion of the APFTs, and in his second year, he did not pass either his fall or spring APFT, with failing scores in the run portion. JA at 12.

In his third year, things worsened. At the start of the year, he was permitted to change companies (referred to as "scrambling") and came under the command of a new Training, Advising, and Counseling ("TAC") officer, referred to as Major W in the administrative record. Id. at 13. According to Hall, Major W created a "toxic leadership environment," "rode [Hall] about his medical and academic issues," and "verbally abused him" by "repeatedly" saying that Hall should be separated from the academy. Id. at 6; id. at 39–40 (Medical Advisory Opinion). Hall also failed his fall APFT and three Indoor Obstacle Course Tests ("IOCTs"), which test a cadet's "full-body functional physical fitness." Id. at 13. That spring, both of Hall's

---

[1] Unless otherwise indicated, the facts are drawn from the ABCMR's 2023 decision.

grandfathers passed away within a month of each other, he failed four academic courses, and he underwent reconstructive shoulder surgery.  Id. at 12–13.[2]

At the conclusion of Hall's third year, Major W recommended that he be separated from the academy.  Id. at 13.  Though Major W acknowledged that Hall had been an "average cadet" prior to the spring of 2011 and that the deaths in his family had impacted "his mental readiness," the major rated Hall's potential for commissioning as "below average this semester."  Id.  He noted that Hall had failed to perform his "squad leader duties," leading to an "F" in his Military Development course that semester, and had "difficulty displaying a consistent pattern of leadership."  Id.  Major W also reported that the TAC team had received "repeated" emails and phone calls from professors expressing "concern about [Hall's] lack of initiative" and "apparent inability to complete simple tasks" and noting that Hall was "continually late for class or absent" and "frequently turned in assignments late, sometimes not at all."  Id.  Hall's Regimental TAC officer also wrote that Hall "had failed to make the necessary course corrections [in the spring] to remediate the MD (Military Development) F he earned last semester" and that he had "not shown the ability to handle stress or multiple tasks simultaneously."  Id.

Instead of separating Hall in 2011, USMA granted Hall a six-month leave of absence to recuperate from his shoulder surgery.  Id. at 6.  On his return, USMA also allowed him to repeat the second semester of his third year.  Id.  The academy, however, did not give Hall the option to scramble companies—an option USMA "customar[ily]" gives cadets returning from leaves of absence but is "not required" to offer.  Id.  As a result, Hall remained in Major W's company.

---

[2] During a 2013 "Mental Status Evaluation," Hall reported that Major W told him that he was "a disgrace to the memory of his grandfathers."  JA at 39–40 (Medical Advisory Opinion).

3

Id.  Even so, things started to improve.  Hall's grades rose, and he passed both a scheduled APFT and IOCT, as well as two APFT "retests" to make up for the previous failures.  Id.

Hall's final year (referred to as "firstie" year) saw mixed results.  In the fall, he was given the distinction of being named to the Regimental Staff.  Id. at 14.  That same semester, however, he failed his Military Development class, injured his wrist during a "Combatives" class, and received two major conduct violations (one for failing to follow instructions and the second for failing to report for counseling or sign out of quarters).  Id.  In December, the supervisor of the Regimental Staff, Major H, noted that Hall's overall performance was "below average," his work on the Regimental Staff was "adequate," and he did not "perform well under stress."  Id.  Major H added, "AY (Academic Year) 13-2 will be an extremely telling semester for [Hall].  I believe he does possess the potential for successful commissioned service, but his performance over the next semester will be the proof."  Id.

In January 2013, doctors determined that Hall's wrist required surgery.  Id.  He underwent the procedure and was placed on a three-month convalescent leave.  Id. at 6, 14.  After his return in May, Hall's doctor cleared him to take an APFT he had missed due to his wrist injury.  Id at 37 (Medical Advisory Opinion).  According to Hall, he told one of his TAC supervisors, Sergeant First Class ("SFC") P, that he "was not ready" to take the exam but acquiesced when SFC P told him a passing score would improve his Military Development grade.  Id. at 17.  During the push-up portion of the test, Hall claims to have reinjured his wrist.  Id. at 6, 17.  The pain in his wrist, Hall says, "affected the remainder of his test," forcing him to run the two-mile portion holding his wrist.  Id. at 17.  Hall failed both the push-up and run components of the test.  Id. at 14.

4

A few weeks later, Hall received a failing grade in his Military Development course, and SFC P recommended he be separated.  Id.  SFC P listed as the "Reason for Submission": "Two consecutive MD Fs; AY 13-1 and AY 13-2.  Failed Firstie Fall APFT, on 2 May 2013."  Id.  And in a section titled "Justification for Separation," SFC P listed the following factors:

- In the spring of 2013, Hall was "corrected on at least two occasions for failure to follow very basic dress and appearance standards," which had been an "ongoing issue."
- At least two instructors "express[ed] concern over [Hall's] lack of motivation and failure to turn in assignments on time," and Hall "continue[d] to ignore email traffic from instructors."
- Hall still had not completed PE450 (an Army Fitness Development course) despite having seventeen months since returning from his extended medical leave of absence to do so.
- Hall "did not take his enrollment in[] SLDP (Special Leader Development Program) seriously."
- Hall failed the May APFT, which was a make-up for the one he had missed the fall before.
- Hall "does not perform well under stress and lack[s] the motivation and competence required of an officer in the United States Army."

Id. at 14–15.

Based on this recommendation, the USMA Academic Board separated Hall at the end of May and decided not to award him a diploma.  Id. at 15.  The Superintendent of USMA also initiated a recoupment action against Hall for the repayment of his tuition but ultimately chose to waive recoupment "based on [the] determination that the applicant's deficiency was not due to a willful act or omission."  Id. at 7.  Hall received an honorable discharge from the Army on February 10, 2014.  Id.

B.  Procedural Background

Three years later, Hall filed an application with the ABCMR, requesting that his records be corrected to show the award of his USMA diploma.  Id. at 5.  After reviewing Hall's documentary evidence, including letters submitted in his support and the Superintendent's recoupment determination, the ABCMR concluded that "it had sufficient evidence to show an

5

injustice occurred" and recommended that Hall be granted his diploma. Id. at 8; see also id. at 458 (initial ABCMR decision). The DASA for Review Boards disagreed, however, denying Hall's application "based on evidence showing the applicant failed to complete all requirements in the academic, military, and physical programs." Id. at 8.

In May 2022, Hall filed this suit, alleging that the DASA's decision was arbitrary and capricious in violation of the APA. See Compl. ¶ 70. Soon thereafter, however, the parties requested—and the Court agreed—to remand the case to the ABCMR. See Joint Mot. to Remand. After reviewing the record from its previous decision, as well as additional evidence and two advisory opinions (one from the USMA and one from the Army Review Board Agency ("ARBA") Medical Advisor), the Board unanimously concluded in July 2023 that Hall "had not demonstrated error or injustice by a preponderance of evidence." JA at 24.

Hall then amended his complaint to allege that the ABCMR's 2023 decision was arbitrary and capricious. See Am. Compl. The Army now moves for dismissal of Hall's amended complaint under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. Hall has cross-moved for summary judgment. Those motions are fully briefed and ripe for review.

## II. Legal Standards

### A. Failure to State a Claim

Dismissal under Rule 12(b)(6) is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim, the Court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1129 (D.C. Cir. 2015). "[D]etailed

factual allegations" are not necessary, but the complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Banneker Ventures, 798 F.3d at 1129 (internal quotations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

B. Summary Judgment

Summary judgment is the proper stage for determining whether, as a matter of law, an agency action is supported by the administrative record and is consistent with the APA. See Richards v. INS, 554 F.2d 1173, 1177 (D.C. Cir. 1977). The APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." 5 U.S.C. § 706(2)(A). Arbitrary and capricious review, however, is "narrow." Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). The Court is not to "substitute its judgment for that of the agency," and instead must determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

The ABCMR is entitled to even greater deference than civilian administrative agencies. Coe v. McHugh, 968 F. Supp. 2d 237, 240 (D.D.C. 2013); see also Jenkins v. Speer, 258 F. Supp. 3d 115, 124 (D.D.C. 2017) (the ABCMR receives an "unusually deferential application of the arbitrary and capricious standard" (quoting Kreis v. Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989)) (cleaned up)). "This deferential standard is calculated to ensure that the courts do not

become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000).

### III. Analysis

Because a claim under the APA presents only questions of law, "the claim may be considered on its merits pursuant to either a motion to dismiss under Rule 12(b)(6) or a motion for summary judgment under Rule 56." Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993). While "there is no real distinction in this context between the question presented on a 12(b)(6) motion and a motion for summary judgment," the D.C. Circuit has advised that it "is probably the better practice" to apply the summary judgment standard. Id. at 1226 & n.5; see also Cumberland Pharm. Inc. v. FDA, 981 F. Supp. 2d 38, 47 (D.D.C. 2013) (evaluating motions for dismissal or in the alternative for summary judgment under only the latter standard). Heeding that guidance, the Court will turn to the parties' summary judgment motions.

Hall claims the ABCMR is not entitled to summary judgment because its decision was arbitrary and capricious for a slew of reasons. The Court will address each but ultimately finds none carries the day.

*Unjust and Unsupported Reason for Separation*. Hall argued before the ABCMR that the academy "unfairly separated him due to physical injuries beyond his control." JA at 25. The Board disagreed, concluding that Hall "overestimate[d] the significance of his injuries and underestimate[d] the significance of his poor performance in his Military Development classes." Id. Hall continues to dispute the point and now asserts that the ABCMR's decision was (1) "not justified" and (2) lacked "substantial evidence" because, as Hall sees it, the failed 2013 APFT

8

was the only reason for his separation.  Pl.'s Mot. Summ. J. at 20, 22; see also Am. Compl. ¶ 103.  This claim misses the mark.

First, in evaluating agency action under the APA, the Court's role is not to determine whether the action was "justified."  To be sure, the ABCMR is tasked with "correct[ing] [a] military record . . . when [it] considers it necessary to correct an error or *remove an injustice*."  10 U.S.C. § 1552(a) (emphasis added).  But, in reviewing that decision under the APA, the Court plays a different role.  It considers "whether the [Board's] decision making process was deficient, not whether [the] decision was correct."  Kreis v. Sec'y of Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005); see also Lakner v. Whitley, No. 19-cv-991 (DLF), 2021 WL 1146299, at *7 (D.D.C. Mar. 25, 2021) ("[T]he Court's role is not to determine whether the Board made the right decision, nor whether the Court would have reached a different conclusion had it reviewed the matter anew.").

Hall's second claim—that the Board lacked substantial evidence—also comes up short.  Informal adjudications challenged under § 706(2)(A) "must be supported by substantial evidence," Safe Extensions, Inc. v. FAA, 509 F.3d 593, 604 (D.C. Cir. 2007), but "[s]ubstantial-evidence review is highly deferential to the agency fact-finder, requiring only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Rossello ex rel. Rossello v. Astrue, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (cleaned up); see also Fla. Gas Transmission Co. v. FERC, 604 F.3d 636, 645 (D.C. Cir. 2010) (The substantial-evidence "standard requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence.").  And in determining whether an agency's findings are rooted in substantial evidence, "weighing the evidence is not the court's function."  United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v.

Pension Ben. Guar. Corp., 707 F.3d 319, 325 (D.C. Cir. 2013); see also Am. Horse Prot. Ass'n v. Yeutter, 917 F.2d 594, 598 (D.C. Cir. 1990) ("*[D]e novo* reweighing of the evidence . . . is not proper when reviewing agency action under an arbitrary and capricious test.").

Here, the Board's conclusions—*i.e.*, that Hall was separated for reasons besides his failure of the May APFT and that such a separation was justified—were backed by "substantial evidence." The ABCMR noted that Hall's "case file [wa]s replete with observations that [he] failed to submit assignments in a timely manner; that his personal appearance (e.g., haircut and uniform crispness) was below standard; and that his personal hygiene was below standard." JA at 25. And the record before the ABCMR supported that conclusion. See, e.g., id. at 13 (noting that Hall's TAC's officer reported that professors had "express[ed] concern about the applicant's lack of initiative, and [his] apparent inability to complete simple tasks" and that Hall "was continually late for class or absent" and "frequently turned in his assignments late, sometimes not at all"); id. at 14 (noting that SFC P provided as a "justification for separation" that Hall "was corrected on at least two occasions for failure to follow very basic dress and appearance standards"). Under the "highly deferential" substantial-evidence standard, this evidence was sufficient. Astrue, 529 F.3d at 1185.[3]

---

[3] The Board also found that Hall's "record indicate[d] [that] he struggled with passing the APFT throughout his time at USMA, and that his inability to pass the test was sometimes due to a slower than standard 2-mile run time, which would indicate a conditioning challenge unrelated to a shoulder or wrist injury." JA at 25. Hall quibbles with this conclusion, claiming that, "as the medical advisory opinion found and as anyone with a cursory knowledge of running is aware, shoulder and wrist injuries greatly impact a person's ability to run without pain." Pl.'s Mot. Summ. J. at 21. But Hall misses the point. The Medical Advisory Opinion concluded that "left wrist pain" impacted Hall's *May 2013 APFT*. JA at 20. The advisory opinion, however, did not find that wrist or shoulder pain affected Hall's performance on prior APFTs—*i.e.*, those he attempted "throughout his time at USMA" and that indicated a larger "conditioning challenge." JA at 25. As for Hall's suggestion that the Court rely on its own "cursory knowledge of running," the Court must limit its review to the facts in the administrative record. See Dist. Hosp. Partners, L.P. v. Sebelius, 971 F. Supp. 2d 15, 32 n.14 (D.D.C. 2013), aff'd sub

*Failure to Consider Hall's Evidence.*  Next, Hall contends that the ABCMR "rejected all the evidence" favoring him.  Pl.'s Mot. Summ. J. at 20.  He points to the following pieces of proof: "[E]ven after [Hall] failed his APFT, his GPA and credit hours were still well above the requirements for graduation"; "many senior figures in West Point and Army leadership wrote letters" in support of his character; and the ARBA Medical Advisory Opinion noted that (1) "[m]edical documentation DID support that left wrist pain" impacted Hall's ability to complete the May 2013 APFT, (2) a physical exam suggested he suffered a "possible injury" during the APFT, and (3) a behavior specialist attributed Hall's failure of two classes in 2011 to "bereavement" and "bullying" by his TAC officer.  Id. at 18–19 (quoting JA at 20, 41).

The ABCMR considered this evidence.  It acknowledged that Hall's grade point average at the time of his separation was 2.5, above USMA's minimum, and that he had earned enough credit hours to graduate.  JA at 7 (citing Hall's counsel argument).  In its review of Hall's service record, the Board noted that Hall had submitted "numerous letters of support" and listed the letters.  Id. at 12, 16.  And, finally, the Board cited the Medical Advisory Opinion and acknowledged the three points in the opinion that Hall now highlights.  Id. at 20–21.  Though it appears this evidence did not outweigh the factors favoring separation, "it is well within the [Board]'s discretion to find[] some pieces of evidence more persuasive than others."  Hayes v. United States, No. 21-cv-362 (JEB), 2022 WL 2817598, at *7 (D.D.C. July 19, 2022) (cleaned up) (alterations in original).  "[U]nder the deferential standard applicable here, it suffices that the Board 'considered the full record' and 'took account of evidence that tended to cut against its

---

nom. Dist. Hosp. Partners, L.P. v. Burwell, 786 F.3d 46 (D.C. Cir. 2015) ("Because review of an agency decision is limited to the administrative record before the agency at the time of the decision, judicial notice of an adjudicative fact not part of the administrative record . . . is irrelevant to the court's analysis of the merits . . . . [unless the fact] qualifies for supplementation as extra-record evidence[.]" (cleaned up)).

11

finding' before making a determination that was 'supported by substantial evidence.'" Id. (quoting Alaska Commc'ns Sys. Holdings, Inc. v. NLRB, 6 F.4th 1291, 1301 (D.C. Cir. 2021)).

*Reversal of Previous ABCMR Decision.* Hall next takes aim at the fact that the ABCMR's 2023 decision marked a reversal of its initial decision. He claims this departure is "in and of itself arbitrary and capricious" and suggests "that the Board implemented a flawed and deficient decision-making process." Pl.'s Mot. Summ. J. at 22. Hall oversimplifies the law. As a general matter, when agency adjudications depart from precedent, the agency must "offer a reasoned basis for its departure." Brusco Tug & Barge Co. v. NLRB, 247 F.3d 273, 278 (D.C. Cir. 2001); see also Belmont Mun. Light Dep't v. FERC, 38 F.4th 173, 185 (D.C. Cir. 2022) ("Although case-by-case adjudication sometimes results in decisions that seem at odds but can be distinguished on their facts, it is the agency's responsibility to provide a reasoned explanation of why those facts matter." (cleaned up)). As the D.C. Circuit has acknowledged, however, "[o]rdinarily . . . the 'precedents' that an agency must explain its failure to adhere to are [] reviewable *final decisions*." Delmarva Power & Light Co. v. FERC, 770 F.2d 1131, 1143 n.9 (D.C. Cir. 1985) (emphasis added). Here, the DASA's decision that relief was unwarranted, not the ABCMR's initial conclusion, represented the final agency decision. See JA 454; see Pl.'s Opp'n at 7 n.1.[4]

In any case, to the extent the ABCMR was required to explain why it changed course, it supplied a "reasoned basis" for doing so. First, as the USMA Advisory Opinion noted, the

---

[4] Under 32 C.F.R. § 581.3, the ABCMR's decision is final when it either denies an application or grants an application subject to certain enumerated conditions, including that the relief awarded by the ABCMR was "as recommended by the proper staff agency in an advisory opinion." 32 C.F.R. § 581.3(g)(2)(i). The record does not indicate, and the parties do not clarify, exactly why the ABCMR's initial decision was not a final agency action. But it appears that the relevant staff agency did not recommend that Hall be awarded a diploma.

ABCMR's prior decision "relie[d] heavily on the [Superintendent's] determination that [Hall's] deficiencies were not the result of a willful act or omission." JA at 19; see also id. at 26 (noting that the ABCMR concur[red] with [the] assessment, recommendation, and rationale" of the USMA Advisory Opinion but that the ABCMR also "independently" determined that "relief was inappropriate").[5]  But this determination was of limited relevance, the advisory opinion continued, since the "willful act or omission" "standard applies to determining whether the applicant should be subject to recoupment and required to reimburse the cost of his educational benefits, not whether the applicant should be awarded a diploma." Id.  Second, the ABCMR had new evidence before it in 2023: the USMA and ARBA Medical Advisory Opinions and the full separation recommendation.[6] (In its initial review, the ABCMR had access only to the front

---

[5] Hall claims that the USMA Advisory Opinion "grossly misrepresented the Board's original determination" and "incorrectly asserted that the Board had erroneously applied recoupment standards." Pl.'s Opp'n at 9. But it is Hall who misconstrues the record. Contrary to Hall's suggestion, the advisory opinion did not characterize the original ABCMR decision as *applying* a recoupment standard, but instead observed that the Board "relie[d] heavily" on the Superintendent's recoupment decision. JA at 19. This observation was accurate. In the portion of the initial decision titled "Board Discussion," the ABCMR "determined that relief was warranted" . . . based on three factors: (1) "the documentary evidence submitted" by Hall, (2) his "letters of support," and (3) "the potential prejudice [he] might have been exposed to when not afforded the opportunity for a company transfer." JA at 458. Under the first factor, "documentary evidence," the Board specifically cited just one piece of evidence: "the memorandum from the Superintendent stating [Hall]s deficiencies were 'not the result of a willful act or omission.'" Id. To assert that the Board "relied heavily" on the Superintendent's determination, as the USMA Advisory Opinion did, is thus not a "gross[] misrepresent[ation]" of the Board's original determination.

[6] Hall picks bones with both advisory opinions. The Court has already described one of his complaints about the USMA Advisory Opinion. But Hall also takes issue with the Medical Advisory Opinion's conclusion that "a failed APFT (or a passed APFT) was not the sole basis for grade determination." Pl.'s Opp'n at 8 n.2. Noting that this statement "is not a medical opinion," Hall contends that its inclusion in the opinion "supports the idea that the outcome of [] Hall's case was arbitrarily and capriciously preordained by the Secretary on remand." Pl.'s Opp'n at 8 n.2. This contention is pure speculation and plainly insufficient to overcome the "strong but rebuttable presumption that administrators of the military, like other public officers,

13

page of the separation recommendation.  JA at 458.)  And this evidence proved integral to the Board's ultimate decision.  See, e.g., JA at 24 (relying on the Medical Advisory Opinion to conclude that Hall had "not demonstrated by a preponderance of evidence that USMA committed error by not referring" him for an evaluation before USMA's Medical Evaluation Board ("MEB")).[7]  It was thus neither arbitrary nor capricious for the Board, faced with new evidence and having reevaluated the importance of the Superintendent's determination, to reach a different conclusion on remand.

*Failure to Provide a More Equitable Remedy*.  Hall next contends that Army Regulation 210-26 "provided more equitable remedies than denying Hall his diploma."  Pl.'s Mot. for Summ. J. at 22–23.  That regulation states, "When a cadet is found to be deficient in [USMA's] academic, military, or physical programs, the following actions may be recommended to the Superintendent . . . as appropriate:" "[s]eparation," "[t]urn-back—transfer of the cadet to next lower class," or "[r]etention with condition."  Army Reg. 210-26 ¶¶ 4-5.  Hall claims he should have been allowed to turn back or have been retained with a condition.  Pl.'s Mot. for Summ. J. at 23.

This challenge too falls flat.  Generally, agencies are required to "afford[] adequate consideration to [] reasonable alternative[s] presented for [their] consideration."  Pro. Pilots Fed'n v. FAA, 118 F.3d 758, 763 (D.C. Cir. 1997); see also Laclede Gas Co. v. FERC, 873 F.2d

---

discharge their duties correctly, lawfully, and in good faith."  Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997).

[7] According to Hall, if the MEB had evaluated him and determined that he should be discharged because of a disability, he would have remained eligible to receive his diploma despite his APFT failure.  JA at 35.  But, as the Board noted, the Medical Advisory Opinion concluded that "there was no eligibility for and no recommendation/referral for a MEB."  Id. at 41.  "Therefore," the opinion continued, "medical disability discharge processing was not warranted for [Hall's] conditions."  Id.

1494, 1498 (D.C. Cir. 1989) (suggesting this requirement also applies in agency adjudications). But they are "not obligated to address" alternatives not raised to them. See Edison Elec. Inst. v. EPA, 2 F.3d 438, 449 (D.C. Cir. 1993); see also Northside Sanitary Landfill, Inc. v. Thomas, 849 F.2d 1516, 1521 (D.C. Cir. 1988) ("Because Northside did not properly present its objections to the EPA during the rulemaking process, we will not address the merits of those objections."). As Hall does not dispute, he never raised Army Regulation 210-26 or the alternatives of "turn-back" or "retention with conditions" to the ABCMR. See Def.'s Opp'n at 6; Pl.'s Opp'n at 10 n.3. Accordingly, the Court will not fault the Board for failing to consider them.

*No Deference*.  Finally, Hall suggests that the ABCMR is entitled to no deference because its reasoning is "utterly illogical" and "patently unfair." Pl.'s Opp'n at 7 (quoting Haselwander v. McHugh, 774 F.3d 990, 993 (D.C. Cir. 2014)). As the foregoing analysis suggests, the ABCMR's reasoning was neither of those things.

A comparison to the cases cited by Hall confirms this conclusion. In Haselwander, the D.C. Circuit did not defer to the ABCMR's decision to deny a records-correction request on the ground that the "records [were] incomplete." 774 F.3d at 993. The circuit found the Board's "reasoning . . . utterly illogical" since the "void in [the] medical records [wa]s the very error that [the plaintiff sought] to have corrected." Id. That is a far cry from the deficiencies Hall alleges. In a second case, the D.C. Circuit found the ABCMR's decision "unworthy of any deference" because its conclusions were "largely incomprehensible." Coburn v. McHugh, 679 F.3d 924, 926 (D.C. Cir. 2012). On this score too, the ABCMR's reasoning passes muster for the reasons already discussed. See also Pl.'s Opp'n at 7 (characterizing the Board's reasoning as "thorough"). In sum, the ABCMR's decision is worthy of deference and complied with the APA.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. A separate Order shall accompany this Memorandum Opinion.

                                                            CHRISTOPHER R. COOPER
                                                            United States District Judge

Date:  July 16, 2024